UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                    Case No. 19-20115

v.                                    Hon. Denise Page Hood

ROMANE PORTER,

               Defendant.

_____/

**ORDER STRIKING DEFENDANT'S**
**MOTIONS FILED AT ECF Nos. 123-126, 134**
**and**
**DENYING DEFENDANT'S MOTIONS**
**FILED AT ECF Nos. 127-130, 132**

## I.    Introduction

On or about October 12, 2021, Defendant, on a *pro se* basis, prepared several

motions (collectively, "the four motions"), each of which eventually was filed on the

Court's docket as a *pro se* filing:

A.    Motion to Dismiss Indictment Pursuant to Fed. Rule Cr. Proc. 12(b)(iii), docketed as ECF No. 127 (and 132).[1]

B.    Motion to Dismiss Indictment pursuant to Fed. Rul. Cr. Pr. 12(b)(c) & (e), docketed as ECF No. 128.

C.    Motion to Dismiss Indictment/Request for a *Franks* Hearing, docketed as ECF No. 129.

D.    Ex-parte Emergency Motion for Immediate Consideration for a Writ of Habeas Corpus to Release from Custody, docketed as ECF No. 130.

---

[1] The documents at ECF Nos. 127 and 132 appear to be the same, although ECF No. 127 has two less pages than ECF No. 132. For purposes of this Order, the Court shall treat the two documents as one motion (ECF No. 127).

At the time Defendant submitted those documents on a *pro se* basis, Defendant was represented by legal counsel, Charles O. Longstreet, II.

On December 16, 2021, the Court held a status conference on the record, at which Defendant, his lawyer (Mr. Longstreet), and the Government lawyers (Hank Moon and Trevor Broad) were present. At the December 16, 2021 status conference, the Court directed Mr. Longstreet to refile Defendant's motions described above on the docket. The same day, Mr. Longstreet refiled – verbatim – the four motions submitted by Defendant; Mr. Longstreet did not sign, revise, or otherwise enhance any of the language in the four motions. *See* ECF Nos. 123-126. On February 3, 2022, the Government filed a response to each of the four motions. *See* ECF Nos. 144-147. The Court held a hearing regarding the four motions on February 16, 2022. On March 9, 2022, the Court held another hearing, at which Defendant insisted that the Court should consider the four motions and requested that the Court allow him to proceed with the four motions on a *pro se* basis.

## II.    Background

Defendant is a disabled United States Navy veteran who was honorably discharged from the United States Navy. On February 28, 2019, he was indicted in federal court for seven counts of sale or possession of stolen motor vehicles from the Silverdome lot in Pontiac, Michigan in 2017. 18 U.S.C. §§ 2313 & 2. By the time of that indictment, Defendant had been convicted in state court (Michigan) of, and had commenced serving a sentence for, the charge of assault by strangulation. In general, Defendant has been held in state custody at the Michigan Department of Corrections

Parnall Correctional Facility in Jackson, Michigan, and he currently is in state custody. Defendant has, however, intermittently been in federal custody on a writ to federal custody since 2019, including for purposes of attending the February 16, 2022 and March 9, 2022 hearings, and will be returned to federal custody in time for his trial.

In this federal case, Defendant has had five attorneys appointed to represent him (John M. McManus, Bertram L. Johnson, Martin E. Crandall, Robert F. Kinney, III, and Mr. Longstreet). On several occasions, Defendant filed motions when he was represented by legal counsel. *See* ECF Nos. 53, 55, 56, 58, 62, 79, 82, 88, 91, and 95. The Court ordered each of those motions stricken from the docket because Defendant was represented by counsel and the Court had not authorized hybrid representation. *See* ECF Nos. 66 and 109. Various other motions have been filed on Defendant's behalf by his appointed attorneys. *See* ECF Nos. 67, 68, 110, and 113.

Defendant has consistently requested materials regarding his state court case. Most of those requests have had nothing to do with the charges against him in this case; nonetheless, the Court and the Government have made significant efforts to accommodate Defendant's requests. Among other things, at Defendant's request, the Government stipulated, and the Court entered a stipulated order, that allowed Defendant to return to state custody in June 2020 because he wanted to pursue matters in the state court case on which he was focused.

Each of Defendant's first four attorneys filed a motion to withdraw as counsel based on, essentially, a material breakdown in the attorney-client relationship.

3

Defendant concurred with each of those motions. Mr. Longstreet was appointed in June 2021 and continues to represent Defendant.

### III.  Analysis

#### A.  Motions Docketed at ECF No. 123-126

The documents filed by Mr. Longstreet at ECF Nos. 123-126 are identical to those filed at ECF Nos. 127-130 discussed below. More specifically, (1) the Motion to Dismiss Indictment Pursuant to Fed. Rule Cr. Proc. 12(b)(iii), filed at ECF No. 124, is the same as the document filed at ECF No. 127 (and 132), except that some of the exhibit pages are missing; (2) the Motion to Dismiss Indictment pursuant to Fed. Rul. Cr. Pr. 12(b)(c) & (e), docketed as ECF No. 123, is the same as the document filed at ECF No. 128; (3) the Motion to Dismiss Indictment, docketed as ECF No. 125, is the same as the document filed at ECF No.129; and (4) the Ex-parte Emergency Motion for Immediate Consideration for a Writ of Habeas Corpus to Release from Custody, docketed as ECF No. 126, is the same as the document filed at ECF No. 130. The Court notes that, due to the Covid-19 pandemic, the efficiency of internal court operations was hindered. As a result, even though the documents filed at ECF Nos. 127-130 were received by the Court prior to ECF Nos. 123-126 being filed, ECF Nos. 127-130 were filed first.

The documents filed at ECF No. 123-126 are not signed by Mr. Longstreet. Those documents are simply the documents prepared by Defendant, on a *pro se* basis, that are also docketed at ECF Nos. 127-130. Mr. Longstreet has not added any legal analysis, factual background, or other pertinent information to any of the documents.

In other words, the documents filed by Mr. Longstreet are, in effect, still the *pro se* filings by Defendant.  The Court notes that the Federal Rules of Criminal Procedure state:

> Every written motion and other paper must be signed by at least one attorney of record in the attorney's name—or by a person filing a paper if the person is not represented by an attorney. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or person's attention.

Fed.R.Cr.P. 49(b)(4). *See also* Fed.R.Civ.P. 11(a) (same).

Pursuant to Federal Rule of Criminal Procedure 49(b)(4), the Court called to Mr. Longstreet's attention at the February 16, 2022 hearing that the documents he filed at ECF Nos. 123-126 were not signed by him (or any other attorney of record). Mr. Longstreet acknowledged the absence of his signature on the four motions.  He advised the Court that he did not sign them because he did not believe the issues raised in the motions have a basis in the law or are nonfrivolous, relying on Michigan Rules of Professional Conduct 1.2 and 3.1.  He indicated that he would file the four motions again, with his signature, only if the Court ordered him to do so.

Although Federal Rule of Civil Procedure 11(b)(2) specifies that an attorney must certify that, when he or she signs or files in a civil case "claims, defenses, and other legal contentions[, the claims, defenses, and other legal contentions] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," there is not a corresponding Federal Rule of Criminal Procedure.  The U.S. Supreme Court has stated, "[no]

decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990) (tactical choices are properly left to the sound professional judgment of counsel).  Michigan Rule of Professional Conduct 3.1 (Meritorious Claims & Contentions, Advocate) states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.  A lawyer may offer a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may so defend the proceeding as to require that every element of the case be established.

Rule 3.1.  Since the February 16, 2022 hearing concluded, Mr. Longstreet has not refiled any of the four motions with his signature.

Pursuant to *Jones*, the Court concludes that Mr. Longstreet had the option to not refile any or all of the four motions with his signature(s) based on his professional judgment.  The Court will not order Mr. Longstreet to resubmit those four motions with his signature on them.  The Court instead will strike the documents entered on the docket as ECF Nos. 123-126 because they were not signed by Mr. Longstreet, as required by Federal Rule of Criminal Procedure 49(b)(4).

### B.    The Court's Consideration of Defendant's Four *Pro Se* Motions

As noted above, each of the four motions docketed at ECF Nos. 127-130 was filed *pro se* by Defendant at a time he was represented by appointed legal counsel

6

(Mr. Longstreet).  As this Court has noted with respect to previous *pro se* filings submitted by Defendant while represented by appointed legal counsel:

> It is well-established law in the Sixth Circuit that a criminal defendant cannot proceed with hybrid representation, whereby he asserts both the right to proceed *pro se* and the right to counsel – he must choose one or the other. *See, e.g., United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987) (citing *United States v. Conder*, 423 F.2d 904, 908 (6th Cir.), cert. denied, 400 U.S. 958 (1970)). The only possible exception would be if the Court permits a form of hybrid representation. *Mosely*, 810 F.2d at 97-98.

ECF No. 109, PageID.567. *See also* ECF No. 66, PageID.265. *See also United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) ("[i]t is well-settled that there is no constitutional right to hybrid representation.").

The decision whether to permit a defendant to both represent himself and be represented by counsel is a matter of the Court's discretion, not a matter of right. *Cromer*, 389 F.3d at 681 n.12; *Mosely*, 810 F.2d at 98.  Such discretion has very rarely been exercised to permit hybrid representation in the Sixth Circuit. The reservation about permitting hybrid representation is warranted:

> There are obvious justifications for the refusal to allow hybrid representation in criminal trials, regardless of the legal experience of the defendant. The potential for undue delay and jury confusion is always present when more than one attorney tries a case. Further, where one of the co-counsel is the accused, conflicts and disagreements as to trial strategy are almost inevitable.

*Mosely*, 810 F.2d at 98 (affirming the trial court's refusal to allow defendant to participate as co-counsel, even though defendant was a trained attorney and a former judge). The undersigned and counsel for both parties are justifiably concerned about

permitting hybrid representation in this case and about setting a precedent for hybrid representation in future cases.

The Court notes that, in this case: (a) Defendant has repeatedly raised the issues raised in the four motions; and (b) the Government has responded to each of the four motions. The Court held a hearing and engaged in a colloquy with Defendant with respect the consideration of his four *pro se* motions. At the March 9, 2022 hearing, the Court conducted a modified *Faretta/McDowell* litany with Defendant to determine whether Defendant's decision to represent himself with respect to the four motions was knowing and voluntary. *See Faretta v. California*, 422 U.S. 806, 835 (1975) (holding that a criminal defendant may proceed *pro se* if his or her decision to do so is voluntary and intelligent); *United States v. McDowell*, 814 F.2d 245, 251-52 (6th Cir. 1987) (approving a list of questions designed to explain the obligations and difficulties of *pro se* representation).

At the March 9, 2022 hearing, the Court advised the Defendant that, by representing himself, he could potentially say or write things that would be detrimental to him at trial, sentencing or on appeal. The Court advised him that if he chose to represent himself on the four motions, the Court was and is not required to provide him with any additional access to a law library and that the March 16, 2022 final pretrial conference and plea cut-off date and the April 5, 2022 trial date would not be continued in order for the Court to decide the four motions (the trial has since been continued to July 19, 2022 for other reasons) . The Court also advised Defendant that, even though this situation is unusual because Defendant would have to waive or

forego the four pro se motions if he withdrew his request for hybrid representation regarding those four motions, individuals are always better off being represented by trained counsel.

Defendant stated that he understood that the Court was considering allowing him to represent himself only with respect to the four motions and would not permit him to represent himself at future hearings and proceedings, including any trial or sentencing that may transpire in his case. Defendant agreed to this arrangement. Defendant said he understood that if he represented himself on the four motions that he alone would be responsible for the arguments on the merits of the four motions, that he was giving up any claim of ineffective assistance of counsel on the four motions, and that he was on his own with regard to the four motions. The Court instructed Defendant that his retained counsel could not give him legal advice on the four motions and could not do legal research for Defendant, and that the Court would only consider the motions as filed, without oral argument.

In response to the Court's questions, the Court notes that Defendant stated that he had never represented himself in a criminal case. Defendant also said he was not familiar with the Federal Rules of Criminal Procedure or the Federal Rules of Evidence, but he acknowledged that he would have to abide by those rules if and as he represented himself.

After reviewing and considering whether to allow Defendant to proceed *pro se* – and with hybrid representation – for purposes of the four motions, the Court notes the following:

9

(1) The request for hybrid representation is for pre-trial motions, so there is no chance for jury confusion.

(2) Defendant was asking to and will be permitted to represent himself only with respect to the four motions.

(3) Proceeding with the four motions on a *pro se* basis appears to be the only vehicle for the Defendant to get his issues before the Court.

(4) The Court finds that the Defendant knowingly, voluntarily, and intelligently waived his right to counsel with regard to the four motions.

(5) The Court finds that Defendant understood that his counsel would not be able to assist him with respect to the four motions (nor did counsel assist Defendant with the preparation of the four motions), which alleviated concerns about conflicts in strategy between defense counsel and Defendant.

(6) The Court finds that Defendant understood that he was waiving a future argument that his counsel was ineffective with regard to the four motions because Deendant is representing himself on those four motions.

(7) The Court finds that Defendant understood that, to the extent the case continues after the Court decides the four motions, his final pretrial conference and plea cut-off date of March 16, 2022 and his trial date of April 5, 2022 (now July 19, 2022) would not be continued or delayed in order for the Court to decide and rule on the four motions.

Based on the reasons set forth above, the Court finds that the instant case qualifies as that most rare of occasions in which the Court should exercise its

discretion to permit a type of hybrid representation.  The Court's finding that hybrid representation is appropriate in this case is based upon the unique facts and circumstances herein.  The Court believes it is in the interests of justice and the efficient resolution of this case to resolve the four motions, as the resolution of the four motions will afford the parties the ability to move forward with the prosecution and defense of the charges in this case, if the charges against Defendant remain pending.  For that reason, the Court has determined that it will address the substance of the four motions and render a decision on the merits regarding the four motions, even though Defendant filed them on a *pro se* basis while represented by counsel.

For the reasons stated above and on the record, the Court will permit Defendant hybrid representation for the limited purpose presenting the four motions for the Court's review and determination because: (1) Defendant knowingly, voluntarily, and intelligently waived his right to representation by Mr. Longstreet with respect to the four motions; (2) Defendant knowingly, voluntarily, and intelligently acknowledged that the hybrid representation was for the limited purpose of the Court's consideration of the four motions; and (3) Defendant knowingly, voluntarily, and intelligently acknowledged that Mr. Longstreet does and will represent Defendant – without hybrid representation – at any proceeding and for all purposes other than the four motions, including for any future motions and at all future proceedings, including any hearings, the final pretrial conference, jury selection, and/or the trial.  The Court believes that allowing the hybrid representation for the limited purpose of allowing and considering

11

the four motions, but barring Defendant from hybrid representation for any other purpose in this matter, is in the interests of justice and judicial economy.

Accordingly, Defendant's request that the Court consider the four motions is granted, as the Court exercises its discretion to permit the Defendant to represent himself only on the four motions. Mr. Longstreet will continue to represent Defendant for the remainder of this case, including at any trial or sentencing that occurs, and Defendant will not be co-counsel or engage in hybrid representation in any matters other than the four motions. Defendant was – and is – on his own in representing himself on the four motions. This means that Mr. Longstreet cannot advise Defendant – nor has Mr. Longstreet advised Defendant – with regard to the substance of the four motions, and Mr. Longstreet cannot and did not conduct legal research on the four motions.

### C.    Motions Docketed at ECF Nos. 127-130

*1.    ECF No. 127*

Defendant contends that his Sixth Amendment right to a speedy trial has been violated. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right a speedy public trial." U.S. CONST. AMEND. VI. A court is to consider four factors when a defendant makes a claim that his right to a speedy trial under the Sixth Amendment has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "No one factor is determinative; rather, they are related factors which must be considered together with

such other circumstances as may be relevant." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

The only factor that weighs in Defendant's favor is the first factor, as this case has now been pending for approximately three years. *United States v. Williams*, 753 F.3d 626, 632 (6th Cir. 2014) (delay that exceeds one year is considered presumptively prejudicial that triggers analysis of the three other *Barker* factors). But, "presumptive prejudice cannot alone carry a Sixth Amendment claim, but rather must be considered in the context of the other factors, particularly the reason for the delay." *United States v. Bass*, 460 F.3d 830, 838 (6th Cir. 2006). For the reasons discussed below, the other three factors weigh heavily against Defendant's claim.

As to the second factor, Defendant's pursuit of remedies *vis a vis* his state court case and conviction–one of the main reasons for the breakdown of attorney-client relationships with multiple attorneys–have been behind most, if not every, delay in this federal case. As noted above, (1) there have been four motions to withdraw filed by highly competent counsel appointed to represent Defendant; (2) Defendant has repeatedly and routinely asked the Government and this Court to produce evidence unrelated to this case but allegedly relevant with respect to his state court case – requests that have been heard and, where possible, have been indulged and accommodated; and (3) Defendant asked, and the Government and the Court agreed to allow Defendant, to be returned to state custody in May/June 2020, to the impediment of advancing this case. Defendant also recently was returned to state custody, at his request, to address matters pertaining to his state sentence.

Each time Defendant has been appointed new counsel, at his request or concurrence, the Court has advised Defendant that the appointment of new counsel would delay his proceedings. On each occasion, Defendant has acknowledged that delays would accompany the assignment of new counsel. Defendant's motion similarly suffers because of the delays accompanying the many motions he or his attorneys have made, as it is well-established that a defendant cannot cite as a basis for a speedy trial claim reasonable delays caused by his motions. *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011). The record in this case reflects that Defendant has filed a motion for release to home confinement (ECF No. 67), motions filed by his counsel (ECF Nos. 67, 68, 110, 113, and 118), and numerous *pro se* motions. *See, e.g.*, ECF Nos. 78, 85, 90, 92, 127, 128, 129, 130, 132, and 134.[2]

Despite Defendant's suggestions otherwise, the Court is not aware, at least to date, that the Government has interfered with Defendant's access to discovery. To the contrary, the Government has repeatedly provided Defendant's multiple attorneys with the discovery pertinent to this federal case – as well as significant information requested that does not relate to this case.

The Court also notes that, for two of the three years during which Defendant's case has been pending, the Eastern District of Michigan has been subject to the Covid-19 pandemic. As a result, all criminal jury trials in the Eastern District were halted

---

[2]Defendant, proceeding *pro se* while represented by Mr. Longstreet, also filed a Motion to Possess and Store a Laptop Computer and Discovery. [ECF No. 134] The Court strikes this document because Defendant was represented by counsel, but it also notes that the parties addressed this matter at the March 9, 2022 hearing and that the substance of Defendant's request was granted by the Court previously. *See* ECF No. 23 (June 14, 2019).

for nearly 18 months, and many remain delayed to this day, because the Eastern District of Michigan has operated and continues to operate under Administrative Orders limiting the number of jury trials that may proceed at any given time. *See, e.g.,* E.D. Mich. Administrative Orders 20-AO-021, 20-AO-039, 22-AO-025.

Regarding the third factor, neither Defendant nor any of his counsel have ever expressed that Defendant is ready to proceed to trial on the federal charges pending against Defendant.  Until Defendant filed the instant motion 32 months after he was indicted and 30 months after his first appearance, he never expressed a concern about, or asserted, his Sixth Amendment right to a speedy trial. *See Barker*, 407 U.S. at 532 (a defendant's failure to timely assert his Sixth Amendment right to a speedy trial makes it "difficult for a defendant to prove he was denied a speedy trial").  The record reflects that the opposite is true.  Defendant  repeatedly consented to excludable delay for purposes of the Speedy Trial Act prior to the onset of the Covid-19 pandemic. commencing on April 29, 2019 and continuing up until March 19, 2020 (six days after the Eastern District of Michigan altered its operations due to the Covid-19 pandemic, including postponing criminal jury trials, pursuant to Administrative Order 20-AO-021). *See,e.g.,* ECF Nos. 22, 26, 49, 65.

The Court finds that Defendant does not satisfy the fourth factor.  Defendant offers no basis upon which the Court should find that he has suffered any prejudice from the extended pendency of this matter. *See Young*, 657 F.3d at 418.  Defendant argues that he has been prejudiced because three witnesses—his godfather and two friends—have died and are unavailable to testify. Defendant does not, however, offer

any information to evaluate the significance of the testimony of these individuals, nor does he explain how their testimony would be relevant in this case. *Id.* at 420 (finding no prejudice when "it is hard to evaluate any significance [the unavailable witness's] testimony might have had").

After a thorough consideration of the circumstances of this case and the four *Barkley* factors, the Court concludes that Defendant's right to a speedy trial under the Sixth Amendment have not been violated.  Defendant's Motion to Dismiss Indictment Pursuant to Fed. Rule Cr. Proc. 12(b)(iii), docketed as ECF No. 127, is denied.

> ### 2.   *ECF No. 128*

Defendant claims that the Government "[s]uppressed, discarded, withheld, or blatantly d[e]stroyed exculpatory evidence" that it had an obligation to produce under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (suppressing evidence that is "material either to guilt or to punishment" violates a defendant's due process rights). ECF No. 123, PageID.610.  Defendant identifies three pieces of evidence that he claims the Government withheld: (1) his state court plea form; (2) GPS tether data regarding Defendant; and (3) an FBI promise not to indict him. *Id*. at PageID.611–612.

As for item (1), Defendant claims that the "F.B.I. suppressed defendant's alleged plea form." *Id*. at PageID.611.  The Court first notes that the Government had no obligation to provide Defendant with a copy of his state court plea form pertaining to charges of assault by strangulation.  Those charges and that plea are not material to guilt or punishment in this federal case regarding the sale and/or possession of stolen vehicles.  The Government represents that it provided Defendant with a copy

of this form back in June 2019, at the request of Defendant's attorney at the time (Mr. McManus), and to his attorney in February 2020 (Mr. Crandall).  *See* ECF No. 144, PageID.1054 (the state court plea form); 1056 (the plea form is Bates-stamped "PORTER-0359").

As to item (2), Defendant seeks GPS tether data on him gathered by the Detroit Police Department as part of his state case, and that GPS tether data is maintained by a private company, Home Confinement Inc.  During the federal investigation, officers obtained a printout of some of Defendant's GPS tether data prior to Defendant's indictment in this case and provided that printout to defense counsel in its initial discovery production in 2019.  *Id.* at PageID.1056 (the GPS tether data is Bates-stamped "PORTER-0121–144"). The Government obtained access to the GPS tether data site and set up a separate account for the defense, then it provided the site address, username, and a temporary password to Defendant's counsel on February 14, 2020.  *Id.*    This means that Defendant's attorneys have had access to all of Defendant's GPS tether data and a way to plot that data since at least February 14, 2020, in the event it is relevant to this federal case.

The Government believed until March 2021 that the printout of Defendant's tether data ("PORTER-0121–144") was all of the tether data that Home Confinement Inc. had on Defendant, as indicated in the Government's email to the Court on March 24, 2021.  Defendant claimed that there was additional tether data covering July 27, 2017—the date of the plea in his state case—and that such tether data would be exculpatory in his state case.   The Government requested and received from Home

17

Confinement Inc. on March 25, 2021, an Excel spreadsheet of all of his tether data and provided that spreadsheet to Defendant's attorney the following day. *Id.* at 1060-61. Although no one realized it earlier, by March 25, 2021 (more than 10 months ago), all counsel knew that the Government had provided Defendant (through his legal counsel) access to all of the GPS tether data he sought (whether or not relevant to this case) in February 2020.  Defendant has possessed an  Excel file containing that same tether data since March 26, 2021 (the day after the Government obtained that Excel file).  Accordingly, the Court concludes that there is no *Brady* requirement as to item (2) because: (a) the tether data Defendant requested is not "material" to his federal case; and (b) the Government provided the requested GPS tether data to Defendant in February 2020.

Defendant's claim regarding item (3) is equally unavailing.  Defendant claims that "the U.S. Government stated on a F.B.I. report that it promised the defendant something but never fulfilled their promise." ECF No. 123, PageID.612.  Defendant specifically claims that the FBI "promised not to indict" him, but that "they never put it in writing." *Id*.  Even if the Court assumes Defendant's claim is true (which the Government denies), there is no discovery or *Brady* violation because there is nothing that the Government can produce.  Defendant argues that it was a verbal promise, so there is nothing in writing to produce (and there is no indication that the promise was recorded by any audio or visual medium).

For these reasons, Defendant's Motion to Dismiss Indictment pursuant to Fed. Rul. Cr. Pr. 12(b)(c) & (e) [ECF No. 128] is denied.

18

3.     ECF No. 129

Defendant again asks the Court to dismiss the indictment, but he also asks for a *Franks* hearing.[3]  Defendant states that he "wishes to challenge the sufficiency of the Indictment that was issued without a Complaint and Affidavit," stating that the substance of the accusation did not establish reasonable cause to believe he committed the crime. ECF No. 125, PageID.685.   Defendant believes that the officers who arrested him and the Government "used Fabricated/False Evidence and Statements Omitted and Presented to the Grand Jury and the court to obtain an Indictment." *Id*. Defendant cites the following issues: (a) his GPS tether data was provided to the grand jury, *id.* at PageID.684; (b) several lines from an underlying Sheriff's Case Report were turned into fabrications and provided to the grand jury, *id*. at PageID.684–85 (paragraphs 2, 5, 6, and 7); and (c) there was a false statement from the underlying police report regarding his interaction at the scene with his state court attorney, who was representing him on a different case.

a.     Disclosure of Grand Jury Matters

Production or disclosure of grand jury matters "is proper only on a showing of 'compelling necessity' and 'particularized need.'" *United States v. Azad*, 809 F.2d 291, 295 (6th Cir. 1986). Grand jury secrecy is "indispensable," codified in Federal Rule of Criminal Procedure 6(e), and supported by strong policy considerations. *See United States v. Procter & Gamble, Co*., 356 U.S. 677, 682-83 (1958) ("compelling

---

[3]In certain circumstances, a defendant in a criminal proceeding is entitled to an evidentiary hearing to challenge the truthfulness of factual statements made in the affidavit supporting the warrant. *See Franks v. Delaware*, 438 U.S. 154, 164-65 (1978).

necessity") (quoting *United States v. Johnson*, 319 U.S. 503 (1943)); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) ("particularized need"); *United States v. Short*, 671 F.2d 178, 184 (6th Cir. 1982). The defendant has the burden of proving a "particularized need." *United States v. Stone*, No. 2:10-CR-20123, 2011 WL 3348051, at *2 (E.D. Mich. Aug. 3, 2011) (citing *Pittsburgh Plate Glass Co.*, 360 U.S. at 400).

The Court notes that the GPS data issue was addressed above, in its consideration of ECF No. 123.  Defendant has not met his burden of demonstrating a particularized need for it, nor he has not alleged that it was false.  As to the lines from an underlying Sheriff's Case Report that Defendant claims constitute "false information" that was provided to the grand jury, Defendant has offered no information substantiating his claims, which he must do. *United States v. Johnson*, No. 19-20274, 2021 WL 5827050, at *1 (E.D. Mich. Dec. 8, 2021) ("these general assertions are speculative and . . . insufficient to show a particularized need for the grand jury transcripts.").

 Defendant does not indicate or explain how the alleged interaction with his attorney at the scene of his arrest is relevant to the federal charges against him, nor does he present any information indicating that this information was falsely presented to the grand jury.  Defendant has not shown or attempted to show a "compelling necessity" or "particularized need" to justify disclosing grand jury proceedings with respect to this alleged interaction and statement. Defendant has "not pointed to anything in the record which might suggest that the prosecution engaged in improper

conduct before the grand jury [, so his claims] amount to nothing more than unsupported speculation, and this is not enough to constitute a 'particularized need.'" *Stone*, 2011 WL 3348051, at *4 (quoting *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978)).

The Court therefore finds that Defendant has not presented, as he must, "evidence of a substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." *Stone*, 2011 WL 3348051, at *3 (citation and internal quotations omitted). As Defendant has not presented any such evidence, the Court denies his request to disclose any grand jury proceedings.

> b.   Dismissal of Indictment

Under Fed. R. Crim. P. 12(b)(3)(B), a defendant may challenge a defect in the indictment. The interpretation of the indictment is generally limited to its four corners. *United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012). An indictment is sufficient "if it 'set[s] forth the offense in the words of the statute itself, as long as those words . . . fully, directly, and expressly . . . set forth all the elements necessary to constitute the offense intended to be punished.'" *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

Defendant presumably does not know what information was presented to the grand jury, and he has not identified any alleged defect or deficiency in the indictment.  He instead blindly alleges that the Government presented fabricated and false information to the grand jury in order to obtain the indictment. Even if true,

"courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *Landham*, 251 F.3d at 1080 (citing *Costello v. United States*, 350 U.S. 359, 362–63 (1956))."An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello*, 350 U.S. at 363.

For the Court to dismiss an indictment based on reliance on false statements, a defendant must show evidence of "demonstrated and longstanding prosecutorial misconduct." *United States v. Nembhard*, 676 F.2d 193, 199 (6th Cir. 1982). Defendant has made "no showing in this record that prosecutorial misconduct is a long-standing or common problem in grand jury proceedings in this district." *Id*. Defendant has not indicated how he has been prejudiced by the allegedly false statement(s), which is fatal to his claim. *See, e.g., Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."). This is true even if the alleged false statement amounts to "prosecutorial misconduct." *Id.* at 255.

Accordingly, Defendant's request to dismiss the indictment pursuant to the motion at ECF No. 129 is denied.

*4.    ECF No. 130*

In this motion, Defendant seeks a writ of habeas corpus under 28 U.S.C. § 2254. The present action is a criminal matter, but a properly filed habeas petition must commence as an "independent civil suit." *Riddle v. Dyche*, 262 U.S. 333, 336 (1923); *see also United States v. Thomas*, 713 F.3d 165, 168 (3rd Cir. 2013) (stating that a petition for habeas corpus under 28 U.S.C. § 2254 "initiates a civil, rather than criminal, action for relief").

Defendant "cannot commence a civil action by filing a motion." *Gibson v. Dep't of Corrections*, No. 07-cv-255, 2007 WL 3170688, at *1 (N.D. Fla. Oct. 30, 2007). Under Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. The Court notes that Defendant twice has filed civil actions for habeas corpus in the Eastern District of Michigan since the indictment was filed in this case, *see* No. 4:20-cv-12967 (Davis, J.); No. 2:20-cv-12968 (Berg, J.), so it is clear to the Court that Defendant understands that he must file a civil action in order to obtain habeas relief. Defendant's motion to obtain habeas relief, docketed as ECF No. 130, is denied.

## IV. Conclusion

Accordingly, and for the reasons stated above,

IT IS ORDERED that the following documents be and are STRICKEN from the Docket:

A.    Defendant's Motion to Dismiss Indictment pursuant to Fed. Rul. Cr. Pr. 12(b)(c) & (e), docketed as ECF No. 123.

B.    Defendant's Motion to Dismiss Indictment Pursuant to Fed. Rule Cr. Proc. 12(b)(iii), docketed as ECF No. 124.

23

C.      Defendant's Motion to Dismiss Indictment/Request for a *Franks* Hearing, docketed as ECF No. 125.

D.      Defendant's Ex-parte Emergency Motion for Immediate Consideration for a Writ of Habeas Corpus to Release from Custody, docketed as ECF No. 130.

E.      Defendant's Motion to Possess and Store a Laptop Computer and Discovery, docketed as ECF No. 134.

IT IS FURTHER ORDERED that the following motions are DENIED:

1.      Defendant's Motion to Dismiss Indictment Pursuant to Fed. Rule Cr. Proc. 12(b)(iii), docketed as ECF No. 127.

2.      Defendant's Motion to Dismiss Indictment pursuant to Fed. Rul. Cr. Pr. 12(b)(c) & (e), docketed as ECF No. 128.

3.      Defendant's Motion to Dismiss Indictment/Request for a *Franks* Hearing, docketed as ECF No. 129.

4.      Defendant's Ex-parte Emergency Motion for Immediate Consideration for a Writ of Habeas Corpus to Release from Custody, docketed as ECF No. 130.

IT IS FURTHER ORDERED that, upon the agreement of Defendant and counsel for both parties, the plea cut-off date in this case is and remains June 21, 2022.

IT IS FURTHER ORDERED that, upon the agreement of Defendant and counsel for both parties, a Final Pretrial Conference in this case shall be held on June 21, 2022, at 11:00 a.m.

IT IS FURTHER ORDERED that, upon the agreement of Defendant and counsel for both parties, a jury trial in this case shall commence on July 19, 2022, at 9:00 a.m.

IT IS FURTHER ORDERED that, for the reasons and as stated on the record on February 16, 2022, March 9, 2022 and March 23, 2022, and upon the agreement

24

of Defendant and counsel for both parties, the time period from February 16, 2022 to July 19, 2022 shall be deemed excludable delay under the provisions of the Speedy Trial Act, Title 18, United States Code, § 3161(h)(7), so that Defendant has ample time to prepare for trial. For those reasons, and those set forth on the record at the February 16, 2022, March 9, 2022 and March 23, 2022 hearings, the Court concludes that the ends of justice served by continuing the trial date outweigh the best interests of the public and the Defendant in a speedy trial.

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: May 16, 2022                    UNITED STATES DISTRICT JUDGE