# United States District Court
# Eastern District of Michigan
# Southern Division

| | |
|---|---|
| United States of America, | Criminal No. 19-20115 |
| Plaintiff, | Honorable Denise Page Hood |
| v. | |
| D-1 Romane Porter, | |
| Defendant. | |

## Government's Trial Brief

The government submits this trial brief to (1) outline the current charges against Defendant Romane Porter ("Porter"), and (2) provide case law on potential legal issues that may arise at trial.

### I. Charges and elements

In the First Superseding Indictment, Porter is charged with four counts. The first is conspiracy to transport stolen vehicles in violation of 18 U.S.C. §§ 371 and 2312. (ECF No. 167: First Superseding Indictment, PageID.1245-53). It alleges that Porter conspired with others to commit interstate transportation of stolen vehicles. (*Id.* at PageID.1245-49). As part of the conspiracy, Porter and others stole motor vehicles from the Silverdome lot in Pontiac, Michigan. (*Id.* at PageID.1246). Porter, knowing the vehicles were stolen, arranged for the sale and transportation of the stolen motor vehicles across state lines. (*Id.*). The count includes 24 overt acts, which detail when

Porter traveled to the Silverdome lot, arranged to transport a stolen vehicle to New Jersey, provided a false title to M.B., sold and arranged for the transportation of several stolen vehicles to Last Stop Auto in Kentucky, *inter alia*. (*Id.* at PageID.1246-49). The elements for Count One are: (1) two or more persons conspired, or agreed, to commit the crime of interstate transportation of a stolen vehicle; (2) the defendant knowingly and voluntarily joined the conspiracy; and (3) a member of the conspiracy did one of the overt acts described in the First Superseding Indictment for the purpose of advancing or helping the conspiracy. Pattern Crim. Jury Instr. 6th Cir. 3.01A (2022 ed.).

Counts Two, Three, and Four consist of substantive counts of transportation of stolen vehicles in violation of 18 U.S.C. §§ 2312 and 2. (ECF No. 167: First Superseding Indictment, PageID.1250-51). Each count alleges that Porter, knowing the vehicle was stolen, unlawfully caused the vehicle to be transported in interstate commerce. (*Id.*). The elements for Counts Two, Three, and Four are: (1) the motor vehicle described in the count was stolen; (2) the defendant transported that vehicle in interstate commerce or caused it to be transported in interstate commerce; and (3) at the time of the transportation, the defendant knew that the vehicle was stolen. Fed. Crim. Jury Instr. 7th Cir. 2312[1] (2020 ed.).

## II. Witness Recall

The United States intends to recall Detective James McCoy multiple times throughout the course of the trial to minimize delay and assist the jury. To that end, the government requests that the Court permit defense counsel to cross-examine

Detective McCoy each time that he testifies but limit the cross-examination topics to material about which Detective McCoy immediately testified.

### III. Possible Legal Issues that May Arise at Trial

#### a. For a conspiracy, an informal agreement is enough

"In establishing the existence of a conspiracy to violate federal law, the government need not prove a formal agreement, because a tacit or mutual understanding among the parties is sufficient to show a conspiratorial agreement." *United States v. Gardiner*, 463 F.3d 445, 457 (6th Cir. 2006) (citing *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985)). "'A conspirator need not have agreed to commit every crime within the scope of the conspiracy, so long as it is reasonable to infer that each crime was intended to further the enterprise's affairs.'" *Id.* (quoting *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990)). And "each conspirator does not have to participate in every phase of the criminal venture, provided there is assent to contribute to a common enterprise." *Id.*

#### b. Porter is responsible for all reasonably foreseeable acts of coconspirators

All members of a conspiracy are responsible for the acts committed by the other members in advancement of the conspiracy, so long as they are reasonably foreseeable. *Pinkerton v. United States*, 328 U.S. 640, 646-48, (1946).

c. **Defendant's statements**

i. **Coconspirator statements are not hearsay**

Certain statements are admissible as non-hearsay because the government will offer them simply because they were made, not for their truth. Fed. R. Evid. 801(c)(2). An out-of-court statement or assertion is hearsay only if "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). A court is required to consider the applicability of hearsay exclusions (Fed. R. Evid. 801(d)) or exceptions (Fed. R. Evid. 803, 804, 807) only if a statement is first hearsay. Any statement offered for another purpose other than the truth of the matter is not hearsay. *See* Fed. R. Evid. 801(c)(2). Frequently, "it is the fact that the declaration was made, and not the truth of the declaration, which is relevant." *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008); *see also United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) ("A statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay.").

ii. **Porter's statements are not hearsay—but only if offered by the government**

Porter's statements are admissible, non-hearsay statements when offered by the government as opposing-party statements. Fed. R. Evid. 801(d)(2)(A) ("A statement that meets the following conditions is not hearsay . . . The statement is offered against an opposing party and was made by the party."). The government may seek to introduce parts—but not all—of Porter's statements. A defendant cannot elicit the

remaining portion of his statements through another witness because they are inadmissible hearsay—and this is true even under the "rule of completeness" and the Confrontation Clause. "The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." *Williamson v. United States*, 512 U.S. 594, 600 (1994); *see also United States v. Gallagher*, 57 F. App'x 622, 627-29 (6th Cir. 2003) (the defendant's "self-serving sections of his statement were inadmissible hearsay unaffected by Rule 106 . . . [because] the completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be excluded.") (internal citation and quotation omitted); *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) (defendant cannot introduce his "own statements through the testimony of other witnesses").

Relatedly, by signing a document, a defendant adopts that statement as his own, so such documents are not hearsay when offered by the government under Rule 801(d)(2)(B). *See Mass v. Northstar Educ. Fin. Inc.*, 514 B.R. 866, 869 (W.D. Mich. 2014) (citing Fed. R. Evid. 801(d)(2) and *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 920 (3d Cir. 1985)). Similarly, a defendant's "possession of a written statement becomes an adoption of its contents." *United States v. Marino*, 658 F.2d 1120, (6th Cir. 1981) (defendant's possession of airline ticket constituted adoptive admission) (citing Fed. R. Evid. 801(d)(2)(B)). For example, the government intends to introduce bills of sale between Porter and Last Stop Auto. These documents contain the following statement:

"I, the undersigned, hereby swear or affirm that I the seller of the vehicles described herein and that the information provided in this bill of sale is true and correct to the best of my belief[,]" and Porter's signature as the seller. Additionally, Porter has photos of these documents on his phone. His signature on the bills of sale and his possession of photos of these documents qualify as adoptive admissions and are not hearsay under Rule 801(d)(2)(B).

### iii. Coconspirator statements made during and in furtherance of the conspiracy are admissible non-hearsay when introduced by the government

Rule 801(d)(2)(E) provides that co-conspirator statements made during and in furtherance of the conspiracy are not hearsay when introduced by an opposing party. Fed. R. Evid. 801(d)(2)(E). To admit the statements under this Rule, the United States must show by a preponderance of the evidence "(1) that a conspiracy existed; (2) that the defendant against whom the [statement] is offered was a member of the conspiracy; and (3) that the hearsay statement was made in the course and in furtherance of the conspiracy." *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979); Fed. R. Evid. 801(d)(2)(E). "[T]he [R]ule does not require that both parties be coconspirators; it merely requires the statement to be offered against a party and be made by a coconspirator of a party during the course and in furtherance of the conspiracy." *United States v. Pike*, 342 F. App'x 190, 193 (6th Cir. 2009) (quotation marks and citation omitted).

### *(1) Conspiracy existed*

"Although [the Sixth Circuit] has long held that the essence of conspiracy is agreement, proof of a formal agreement is not necessary; 'a tacit or material understanding among the parties will suffice.'" *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997) (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir.1990)). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* at 971 (quotation omitted).

### *(2) During*

"Sixth Circuit law provides that '[w]here a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn.'" *United States v. Galicia*, 609 F. App'x 302, 305-06 (6th Cir. 2015) (quoting *United States v. Rios*, 842 F.2d 868, 873 (6th Cir. 1988)). And even if a coconspirator is "no longer an active participant in the conspiracy . . . he is nonetheless presumed to be a continuing member, and is chargeable for subsequent acts of co-conspirators, so long as the conspiracy was ongoing and [the defendant] did not establish his affirmative withdrawal from the conspiracy." *United States v. Robinson*, 390 F.3d 853, 882 (6th Cir. 2004) (affirming admission of statements under Rule 801(d)(2)(E) against incarcerated defendant). To that end, "[m]ere cessation of activity is not sufficient to establish withdrawal from a conspiracy . . . and a defendant's arrest or incarceration does not

qualify as an affirmative, volitional act of withdrawal." *Id.*; *see also United States v. Blake–Saldivar*, 505 F. App'x 400, 410 (6th Cir. 2012) (holding that coconspirator statements may be admissible under Rule 801(d)(2)(E) even if defendant was incarcerated at the time the statement was made).

### (3) In furtherance

"A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy." *United States v. Zertuche*, 565 F. App'x 377, 384 (6th Cir. 2014) (quotation marks and citation omitted). "Moreover, a statement may be in furtherance of a conspiracy even if not exclusively, or even primarily, made to further the conspiracy." *United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009) (internal citation omitted).

Examples of statements that meet the "in furtherance" requirement include "statements identifying other conspirators and their roles in the conspiracy, statements to inform other conspirators of the activities or status of the conspiracy, and statements as to the source or purchaser of controlled substances." *Zertuche*, 565 F. App'x at 385. "Statements designed to conceal an ongoing conspiracy are made in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)." *United States v. Payne*, 437 F.3d 540, 546 (6th Cir. 2006). Some of the trial evidence will include statements made by co-conspirators during the conspiracy to further the conspiracy's objectives. These statements fall squarely under 801(d)(2)(E) and are not hearsay.

### iv. No Confrontation Clause issue for co-conspirator statements

Additionally, such statements are nontestimonial and do not implicate the Confrontation Clause. *See Giles v. California*, 554 U.S. 353, 375 n.6 (2008) (co-conspirator statements under Rule 801(d)(2)(E) are not testimonial, and the Rule does not pertain to a constitutional right). "The threshold question . . . is 'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *Mooneyham*, 473 F.3d at 286-87 (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)). When "statements [a]re admitted into evidence under the theory that they were statements made by a co-conspirator in furtherance of the conspiracy. . . [b]y definition, such statements are not by their nature testimonial[.]" *Id.* (internal quotation omitted). "Indeed, the *Crawford [v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004),]* court specifically identified statements in furtherance of a conspiracy as examples of statements that are inherently non-testimonial." *Id.*

The co-conspirator statements the government will seek to admit are nontestimonial because there is no evidence that the declarants intended their statements as testimony against Porter. *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009). Because these were made during and in furtherance of the conspiracy, they are, by definition, not testimonial. These statements are admissible as coconspirator statements under Rule 801(d)(2)(E), or alternatively, as statements against penal interest under Rule 804(b)(3).

### d. Law enforcement testimony

#### i. Background information of investigation

"Agents are permitted to testify regarding how they became involved in a case, what allegations they were investigating, who the suspects were, and similar background information." *United States v. Young*, 847 F.3d 328, 351 (6th Cir. 2017) (citing *United States v. Kilpatrick*, 798 F.3d 365, 381 (6th Cir. 2015)). "This sort of testimony, which is designed to set the stage for the introduction of evidence, differs substantively from problematic 'preview testimony' that 'purports to sum up (in advance of the evidence) the government's overall case.'" *Id.* (quoting *Kilpatrick*, 798 F.3d at 381-82). "Explaining the allegations underlying an investigation does not implicate Rule 701 or *Freeman*." *Id.*

#### ii. Testimony about what the evidence does not contain

"It is also permissible for an agent who has reviewed the evidence to testify concerning what the evidence does not contain." *Kilpatrick*, 798 F.3d at 382. "A witness who has examined the records may testify that no record 'of a specific tenor is there contained.'" *Id.* (quoting *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979)). "Testifying to the absence of evidence also does not implicate Rule 701 or *Freeman*." *Id.*

#### iii. "Framing" references to prior testimony are appropriate

"[E]specially in a complicated trial, a witness may make short 'framing' references to previously-admitted evidence." *Id.* The case agent can answer "whether they recalled certain details of prior witnesses' testimony." *Id.* "These short framing questions tied the evidence together in a manner that was helpful to the jury." *Id. See*

*also United States v. Smith*, 601 F.3d 530, 540 (6th Cir. 2010) (permitting summary-reference testimony in complex cases where the volume of evidence is "plausibly confusing to the jury").

### iv. Summary testimony of voluminous writings and recordings under Rule 1006

A witness can "summarize voluminous writings or recordings." *Kilpatrick*, 798 F.3d at 383. "Under Federal Rule of Evidence 1006, a party may 'use a summary . . . to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court,' provided that the other party has been given an opportunity to examine the entire record." *Id.* "The 'point of Rule 1006 is to avoid introducing all the documents.'" *Id.* (quoting *United States v. Faulkenberry*, 614 F.3d 573, 588–89 (6th Cir. 2010)).

Relatedly, a witness can use a "pedagogical device," or illustrative aid that (1) is used to summarize or illustrate evidence admitted into evidence; (2) is not itself admitted into evidence; and (3) may reflect to some extent, through captions or other organization devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent. *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998). The Court has discretion to permit the use of pedagogical-device summaries "to clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the court or jury." *Id.* The United States intends to utilize pedagogical-device summaries during trial, which

will help the jury to understand the complex and voluminous records involved in the case. The United States will provide Porter with copies of these summaries in advance of trial. The government also anticipates utilizing a pedagogical-device summary to assist the jury with evidence obtained from Porter's phone. This summary will help the jury understand relevant evidence from Porter's phone including conversations, photos, and videos. It will provide Porter with a copy of this summary in advance of trial.

Additionally, the United States will seek to admit secondary-evidence summaries of Porter's GPS tether locations on maps provided through Attenti's software. These are a combination of primary-evidence summaries under Rule 1006 and pedagogical-device summaries. These summaries should be admitted in evidence in addition to the GPS location data because the summaries so accurately and reliably summarize complex or difficult evidence and will materially assist the jurors in better understanding the GPS location data. The maps will allow the jury to understand where Porter's GPS tether location was at a specific date and time. Therefore, the United States will seek to admit both the underlying GPS data and records from Attenti as well as the secondary-evidence summaries of Porter's location data. The United States has provided these summaries to Porter as part of discovery. The summaries are Bates No. PORTER-0305 through PORTER-0356. The government will also seek to introduce videos showing Porter's GPS locations from Attenti's website as secondary-evidence summaries, which have been provided to defense counsel.

Additionally, the United States asked defense counsel if Porter would stipulate to the accuracy of his GPS tether data. Defense counsel indicated that Porter would stipulate only that he was under a court-order to wear a GPS monitor. Therefore, the government intends to introduce business records from Home Confinement, showing Porter's GPS tether devices, and from Attenti, detailing Porter's GPS locations while on tether. The government will reference this data as Porter's GPS tether data but will not introduce any evidence relating to the reason that he was on a GPS tether.

Relatedly, the United States filed a motion in limine to admit self-authenticating records, including the GPS data. (*See* ECF No. 175: Mot. in Limine, PageID.1297-1302). Defense counsel has no objections to pre-admitting the records identified in the motion and included on a disk provided to the Court. (*Id.*). Pre-admitting these records will save time during trial as it will alleviate the need for the government to call various records custodians, several of which are located out of state.

### v. A witness cannot be impeached by another's statement

There are several reasons why a defendant cannot use an agent's report to impeach another witness who testifies at trial. First, "it would be grossly unfair to allow the defense to use a statement to impeach a witness which could not fairly be said to be the witness' own rather than a product of the investigator's selections, interpretations, and interpolations." *United States v. Carroll*, 26 F.3d 1380, 1391 (6th Cir. 1994). To permit cross-examination of witness using an agent's report (and vice-versa)

would be unfair, and not impeachment. A given report or statement is that speaker's prior statement, and not the statement of other witnesses. Second, a report or statement would be hearsay when presented to another witness. A "declarant" is a person who makes a statement. Fed. R. Evid. 801(b). A statement other than one made by the declarant at the trial, offered to prove the truth of the matter asserted, is "hearsay." Fed. R. Evid. 801(c). Finally, Rule 613 deals with impeachment of a witness by reference to a prior statement by that witness. The Rule requires that the statement in question be "a prior statement made by the witness[.]" Fed. R. Evid. 613(a). Under Rule 613, a witness can be impeached by reference only to his own prior statement, not by a prior statement made by another person. *United States v. Valentine*, 70 F. App'x 314, 323 (6th Cir. 2003) (citing *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993)).

### vi. Refreshing a witness's memory

A document may be used to refresh a witness's memory only after his memory has been exhausted. *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 716 (6th Cir. 2005). Once a witness's memory has been exhausted, a party may refresh the witness's memory by referring to notes or reports under Federal Rule of Evidence 612. *See United States v. Rinke*, 778 F.2d 581, 587 (10th Cir. 1985).

Rule 803(5) "allows a document to be read to the jury as a past recollection recorded if (1) the witness once had knowledge about the facts in the document, (2) the witness now has insufficient memory to testify about the matters in the document, and (3) the document was recorded at a time when the matters were fresh in the witness'

mind and the document correctly reflects the witness' knowledge of the matters." *United States v. Smith*, 197 F.3d 225, 231 (6th Cir. 1999) (citing *United States v. Porter*, 986 F.2d 1014, 1016 (6th Cir. 1993) (rehearing and rehearing en banc denied)); Fed. R. Evid. 803(5). This applies to information from police reports. *See, e.g.*, *United States v. Eason*, 188 F. App'x 383, 389 (6th Cir. 2006) (allowing coconspirator's phone number from police report under past-recollection-recorded exception); *United States v. Picciandra*, 788 F.2d 39, 44 (1st Cir. 1986) (admission of DEA report proper under the past recollection recorded hearsay exception); *United States v. Green*, 258 F.3d 683, 689 (7th Cir. 2001) (trooper's report qualified as past recollection recorded); *United States v. Sawyer*, 607 F.2d 1190, 1193 (7th Cir. 1979) (Rule 803(8) concerning public records does not disqualify the recorded recollections of a testifying law enforcement officer when such recollections would otherwise be admissible as a recorded recollection under Rule 803(5)); *Terry v. City of Detroit*, No. 2:17-CV-11450, 2018 WL 2239559, at *2 (E.D. Mich. May 16, 2018) (the information contained in the police report could plausibly be admitted at trial in several ways: (1) as personal knowledge under Fed. R. Evid. 602; (2) if [the officer']s memory fails, the police report could be used to refresh his recollection under Fed. R. Evid. 612; and (3) if the notes fail to refresh [the officer's] recollection, he could still possibly read his report into evidence as a past recollection recorded under Fed. R. Evid. 803(5)). It also applies to grand-jury testimony. *See United States v. Patterson*, 678 F.2d 774, 779 (9th Cir. 1982) (quoting Rule 803(5)'s 1976 advisory committee notes).

Similarly, if a witness testifies inconsistent with a prior statement made under oath, the witness's prior testimony is not hearsay under Rule 801(d)(1)(A). Fed. R. Evid. 801(d)(1)(A). For example, a witness's grand jury testimony—given under penalty of perjury—may come in as substantive and impeachment evidence if the witness testifies inconsistent from their testimony before the grand jury. *See, e.g., United States v. Hadley*, 431 F.3d 484, 512 (6th Cir. 2005) (limited and vague recall of events, equivocation, and claims of memory loss satisfy the requirement of Rule 801(d)(1)(A) that a prior statement be inconsistent with the declarant's testimony) (collecting cases).

                Respectfully submitted,

                Dawn N. Ison
                United States Attorney

                *s/ Danielle Asher*
                Danielle Asher
                Trevor M. Broad
                Assistant United States Attorneys
                211 W. Fort Street, Suite 2001
                Detroit, MI 48226
                (313) 226-9518
                danielle.asher@usdoj.gov

Date:  July 11, 2022

**Certificate of Service**

I hereby certify that on July 11, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to Porter's attorney of record, Charles Longstreet.

*s/ Danielle Asher*
Danielle Asher
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9518
danielle.asher@usdoj.gov